# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:16-cv-90-FDW
### (3:12-cr-228-FDW-1)

| | | |
|---|---|---|
| TONY HUMPHREY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct

Sentence under 28 U.S.C. § 2255, (Doc. No. 1).

## I.      BACKGROUND

In early April 2012, Petitioner Tony Humphrey engaged in a two-week crime spree in

Charlotte, North Carolina, robbing two branches of a finance company, a restaurant, a bank, and

a business.  (Crim. Case No. 3:12-cr-228-FDW-1, Doc. No. 64 at ¶¶ 5-15: PSR).  The crime

spree began on April 3, 2012, when Petitioner entered the Regional Finance Corporation on

North Tryon Street, pointed a handgun at two employees, and demanded money.  (Id. at ¶ 6).  He

fled with over $2,000.  (Id.).  Petitioner admitted to this conduct.  (Id.).  On April 6, Petitioner

and an accomplice, Corey Miller, placed an order at a Sonic drive-thru.  (Id. at ¶ 8).  Petitioner,

armed with a handgun, then entered the business and demanded money.  (Id.).  When an

employee told him she could not give him any money, Petitioner pointed the gun at her head,

said, "Bitch, I'm not playin'," and pulled the trigger.  (Id.).  The gun again did not fire, so

Petitioner put the gun back to the employee's head and pulled the trigger again.  (Id.).  When the

1

gun did not fire, he fled without getting any property. (Id.). Petitioner admitted to the robbery, but he claimed the gun was not loaded. (Id.).

On April 13, Petitioner and Adonte Young drove to a PNC bank in a stolen vehicle. (Id. at ¶ 10). One of them pointed a handgun at a teller's head and demanded money. (Id.). The two men made off with over $9,000. (Id.). Petitioner was identified in photos from the bank. (Id. at ¶ 24). The following day, Petitioner and Miller, both wielding firearms, entered an Auto King, pointing the guns at the business's employees. (Id. at ¶ 13). The employees escaped to the back of the business, and Petitioner and Miller fled in a stolen Dodge Caravan without obtaining any property. (Id.). Surveillance footage showed Petitioner at the location with a handgun, and his mother identified him in a photograph. (Id.).

Two days later, an unmasked man entered the Regional Finance Corporation on East Independence Boulevard, closely followed by a second man whose face was covered. (Id. at ¶ 15). Both men pointed handguns at the employees and demanded money. (Id.). The men took approximately $3,400 in cash and checks before fleeing in a Dodge Caravan driven by a third man. (Id.). Although Petitioner denied participating in this robbery, the Dodge Caravan that was used in the robbery was identified as being driven by Petitioner, and Petitioner's fingerprint was found on the front door of the business. (Id.).

When initially questioned regarding the robberies, Petitioner denied involvement. (Id. at ¶ 22). However, after being confronted with surveillance video and other evidence, he admitted to being the gunman in the first Regional Finance robbery, as well as the Sonic and Auto King robberies. (Id.). He claimed he was only the driver in the second Regional Finance robbery. (Id.). Petitioner and his accomplices were charged in a sixteen-count indictment. (Id., Doc. No. 3: Sealed Indictment). Petitioner was charged with Hobbs Act robbery for the two Regional

2

Finance robberies (Counts One and Ten); attempted Hobbs Act robbery for the Sonic and Auto King offenses (Counts Three and Eight); bank robbery for the PNC offense (Counts Five and Six); possession with intent to distribute crack cocaine (Count Fifteen); possession with intent to distribute marijuana (Count Sixteen); and five counts of use of a firearm in furtherance of a crime of violence (Counts Two, Four, Seven, Nine, and Eleven). (Id.).

Petitioner entered into a plea agreement, agreeing to plead guilty to two counts of Hobbs Act robbery; two counts of attempted Hobbs Act robbery; one count of armed bank robbery; and two counts of use of a firearm in furtherance of a crime of violence (Counts One, Two, Three, Four, Six, Eight, and Ten). (Id., Doc. No. 35 at ¶ 1: Plea Agreement). In exchange, the Government agreed to dismiss Counts Five, Seven, Nine, Eleven, Fifteen, and Sixteen. (Id. at ¶ 2). As part of the plea agreement, Petitioner agreed that he was waiving his right to be tried by a jury, as well as his right to contest his conviction or sentence on direct appeal or in any post-conviction proceeding, except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Id. at ¶¶ 17-19).

At the plea hearing, Petitioner testified that he had received a copy of the indictment and that he had discussed it with his attorney. (Id., Doc. No. 99 at 5: Plea Tr.). The magistrate judge went through each count of the indictment by its terms and in layman's terms and noted the punishment ranges, including the mandatory minimum consecutive sentences for the firearm counts. (Id. at 5-13; 17). The magistrate judge explained Hobbs Act robbery, possession and use of a firearm in furtherance of a crime of violence, armed robbery, and attempted robbery. (Id.). Petitioner testified that he understood the charges, as well as the maximum penalties. (Id. at 13). He also testified that he had spoken with his attorney about the mandatory minimum sentences. (Id.). Petitioner agreed that he understood that he had the right to a jury trial, where he would be

3

presumed innocent and the Government would have the burden to prove his guilt beyond a reasonable doubt. (Id. at 16). Petitioner stated that he understood the charges and that he was guilty of the crimes. (Id. at 17).

The Government and the Court both discussed the appeal and post-conviction waiver provisions in the plea agreement, and Petitioner agreed that he was waiving those rights. (Id. at 19; 21). Petitioner testified that no one had threatened him or forced him to plead guilty and that, other than the terms of the plea agreement, no promises had been made to him to persuade him to plead guilty. (Id. at 21-22). Petitioner stated that he had had sufficient time to discuss the charges and any possible defenses with his attorney and that he was satisfied with his attorney. (Id. at 22).

Given the lengthy mandatory minimum sentences, as well as the consecutive nature of the sentences on the firearm counts, the magistrate judge again questioned Petitioner as to whether he understood that he was likely to receive a lengthy prison term, whether he had discussed this with his attorney, and whether this was what he wanted to do. (Id. at 23). Petitioner responded, "Yes." (Id.). Counsel then told the Court that he had reviewed all of this with Petitioner and that he believed that Petitioner understood the consequences of what he was doing. (Id. at 24). Counsel conceded that the indictment charged five firearm counts, which would have carried an even longer consecutive sentence if Petitioner was convicted at trial. (Id. at 24-25). Counsel also admitted that "the evidence in his case is extraordinary and very strong against him, including a confession." (Id. at 25). Given that Petitioner was young, counsel noted that he had a chance of getting his life back with the plea agreement, whereas if he went to trial, that was unlikely. (Id. at 26). Counsel also stated that they had discussed whether, given the amount of time Petitioner faced, he should go to trial, but Petitioner "really feels that he just

4

needs to come forward, make amends, and that this is ultimately the right thing to do." (Id. at 26-27). The magistrate judge accepted Petitioner's plea, finding that it was knowingly and voluntarily made. (Id. at 28).

The probation officer issued a presentence report, finding that Petitioner's greatest adjusted offense level was 28, which when combined with the four-level multiple count adjustment, and three-level decrease for acceptance of responsibility, resulted in a total offense level of 29. (Id., Doc. No. 64 at ¶¶ 70-77). Petitioner's criminal history category was I, which resulted in a guidelines range of 87-108 months of imprisonment, plus seven years of imprisonment for the first firearm offense and 25 years of imprisonment for the second firearm offense. (Id. at ¶¶ 82; 104-07).

At sentencing, Petitioner reaffirmed the answers he gave at the plea hearing and again admitted that he was guilty of the charges. (Id., Doc. No. 100 at 2-4). This Court affirmed the magistrate judge's finding that Petitioner's plea was knowingly and voluntarily made. (Id. at 4). The parties stipulated to the factual basis in the PSR. (Id. at 5). Counsel again represented to the Court that the evidence against Petitioner was "extraordinary," that he gave "a full confession," and that Petitioner had told him that he needed to say that he was sorry and make amends. (Id. at 11; 14). Petitioner stated that he had listened to what his counsel had said and that this covered everything. (Id. at 14-15). The Court adopted the PSR and sentenced Petitioner to 87 months of imprisonment, followed by consecutive terms of seven years and 25 years for the firearm offense, resulting in a total sentence of 471 months. (Id., Doc. No. 85: Judgment).

Petitioner appealed, and counsel filed an Anders brief, suggesting that the sentence imposed was unreasonable. See United States v. Humphrey, 594 F. App'x 183 (4th Cir. 2015). However, the Fourth Circuit affirmed, holding that a review of the record showed that "the

magistrate judge conducted a thorough plea colloquy, satisfying the requirements of Fed. R. Crim. P. 11 and ensuring that Petitioner's plea was knowing, voluntary, and supported by an independent factual basis." Id. at 184.  Petitioner then timely filed the pending motion to vacate, placing it in the prison system for mailing on January 30, 2016.   In the motion to vacate, Petitioner contends that trial counsel provided ineffective assistance by not advising him of the nature of the charges against him and the burden of proof and by not objecting to the Court's alleged failure to adequately advise him of the nature of the charges against him at his plea hearing.  Petitioner also alleges in conclusory fashion that appellate counsel was ineffective, but he does not allege any facts to support this claim.

## II.      STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).  Furthermore, Petitioner's request for appointment of counsel in this matter is denied.

## III.     DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there

is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating such a claim, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).

Petitioner argues that he received ineffective assistance of trial counsel based on counsel's failure to object to the magistrate judge's alleged failure to comply with Federal Rule

of Criminal Procedure at Petitioner's plea hearing.[1]  More specifically, Petitioner contends that

the magistrate judge failed to explain the elements of the offenses to him during the plea hearing

and that the magistrate judge did not determine whether he understood those charges.[2]  (Doc. No.

1 at 3-4).  Thus, he contends that counsel should have objected to this alleged failure to comply

with Federal Rule of Criminal Procedure 11.  (Id.).  Petitioner also argues that counsel merely

explained the possible sentencing range to him and that he did not explain the charges or his

options.  (Id. at 4; 8).  Petitioner concedes that counsel advised him that he was likely to face a

40-year sentence if he pleaded guilty, but he nevertheless contends that he pleaded guilty

"because I was confused and just took [counsel's] advice to plead guilty."  (Id. at 7-8).  He

contends that he did not realize that the Government had the burden to prove every element of

the offense beyond a reasonable doubt.  (Id. at 8).  Petitioner asserts that he wanted to go to trial

and that if counsel had explained the elements of the charges, he would not have pleaded guilty,

but would have proceeded to trial to make the Government prove every element of the charges.

(Id. at 4; 7-8).

A court must explain "the nature of each charge to which the defendant is pleading

guilty."  FED. R. CRIM. P. 11(b)(1)(G); see United States v. Carter, 662 F.2d 274, 276 (4th Cir.

---

[1]  Although Petitioner contends that appellate counsel also provided ineffective assistance, he
does not identify how counsel was deficient on appeal, or what prejudice Petitioner allegedly
suffered.  (Doc. No. 1 at 1).  Accordingly, this claim is subject to dismissal as conclusory.  See
United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it is proper to dismiss §
2255 claims based on vague and conclusory allegations), cert. denied, 135 S. Ct. 47 (2014).

[2]  To the extent this allegation could be read as a separate claim, Petitioner is barred from
challenging his plea based on the waiver provision in his plea agreement, as well as his
procedural default in failing to raise this issue before the district court or on appeal.  See Bousley
v. United States, 523 U.S. 614, 621-22 (1998) (claims of error that could have been raised on
direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the
default and actual prejudice, or demonstrates that he is actually innocent of the offense);
Lemaster, 403 F.3d at 220.

1981).  This should not be "a rote recitation of the elements of the offense."  United States v.

DeFusco, 949 F.2d 114, 117 (4th Cir. 1991).  Rather, "the trial court is given a wide degree of

discretion in deciding the best method to inform and ensure the defendant's understanding."  Id.

Information regarding the nature of the charges may be provided before the plea hearing, and a

defendant's representation that he has reviewed the charges and understands them supports a

finding of compliance with Rule 11.  (Id.).

        Petitioner never identifies what element of the charges he allegedly was not informed of

or did not understand.  Here, the record establishes that he was adequately advised of the

charges.  Petitioner admitted that he had reviewed and discussed the charges with his attorney.

(Crim. Case No. 3:12-cr-228-FDW-1, Doc. No. 99 at 5).  The magistrate judge explained not just

the charges as set forth in the indictment, but also what the charges were in layman's terms.  (Id.

at 5-13).  The magistrate judge also explained that the Government had the burden to prove

Petitioner's guilt beyond a reasonable doubt.  (Id. at 16).  The Fourth Circuit held on direct

appeal that the plea colloquy complied with Rule 11 and that Petitioner's plea was knowingly

and voluntarily made.  Humphrey, 594 F. App'x at 184.  Petitioner cannot challenge this finding

on collateral review.  See United States v. Linder, 552 F.3d 391, 397 (4th Cir. 2009).  Therefore,

Petitioner cannot show that counsel was deficient for failing to challenge the advice that

Petitioner received regarding the nature of the charges against him or the Government's burden

of proof because the Court's admonitions were accurate.  See Strickland, 466 U.S. at 687-88.

Because the plea proceeding was adequate, any deficiency with respect to counsel's explanation

of the charges or failure to explain the burden of proof was cured by the Rule 11 hearing.  See

United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995) (holding that any misinformation from

attorney was corrected at the Rule 11 hearing); United States v. Lambey, 974 F.2d 1389, 1395

(4th Cir. 1992) (en banc) (recognizing that courts must be able to rely on their subsequent dialogue with defendants).

Petitioner cannot show prejudice where there was no error during the plea proceedings. See Meyer, 506 F.3d at 369. Furthermore, it would not have been objectively reasonable for Petitioner to proceed to trial in light of the overwhelming evidence against him, including his own confession. As his counsel noted during the plea hearing, given that Petitioner faced mandatory terms of 107 years on just the firearms counts had he proceeded to trial, he made a knowing decision to plead guilty to try to get his life back. (Crim. Case No. 3:12-cr-228-FDW-1, Doc. No. 99 at 24-27). At sentencing, Petitioner's counsel acknowledged Petitioner's guilt and desire to accept responsibility and move forward by pleading guilty, and Petitioner agreed that counsel had accurately represented his position. (Id., Doc. No. 100 at 11; 14-15). Petitioner never challenged counsel's representations regarding his decision to plead guilty.

Thus, Petitioner's assertion that, if he had been advised of all of the elements of the offenses against him, he would have proceeded to trial, is incorrect because he was advised of the elements, and he chose not to proceed to trial. Petitioner's belated assertion that he wanted to put the Government to its burden of proof is insufficient to overcome his representations to this Court or to show prejudice, since he was correctly advised of the elements of the offenses, as well as the length of the sentence that he faced, and he chose to plead guilty to a sentence that ultimately was about 39 years, as opposed to a sentence likely in excess of his life span if he had proceeded to trial. See Meyer, 506 F.3d at 369. It would not have been rational for Petitioner to proceed to trial given the strength of the evidence against him and the benefits that he derived from the plea agreement. See United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015).

Because Petitioner cannot show either deficient performance or prejudice, his ineffective assistance of counsel claim is denied. See Strickland, 466 U.S. at 687-88, 694.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's § 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Frank D. Whitney
Chief United States District Judge

11